602 So.2d 435 (1992)
Hugh Michael LOW
v.
STATE of Alabama ex rel. Patricia Ann Low WALTMAN.
2910205-X.
Court of Civil Appeals of Alabama.
July 10, 1992.
*436 Herndon Inge, Jr. of Inge, McMillan & Coley, Mobile, for appellant.
William Prendergast and Lois Brasfield, Asst. Attys. Gen., for appellee.
RUSSELL, Judge.
The State of Alabama (state) on behalf of Patricia Ann Low Waltman (mother) filed a contempt petition for non-payment of support, alleging that Hugh Michael Low (father) was ordered to pay $100 per month child support and that he was $19,000 in arrears in child support. It also alleged that there had been a material change of circumstances and that the father had an increased ability to pay child support. It asked that the trial court modify the child support in accordance with Rule 32, Alabama Rules of Judicial Administration.
The parties reached an agreement that was ratified and affirmed by the trial court on March 15, 1991, holding that the father shall pay $12,000 to the mother within thirty days in full settlement of unpaid child support, that the father shall pay $547.23 per month in child support in compliance with Rule 32, that the court shall retain jurisdiction for the purpose of determining college support according to Ex parte Bayliss, 550 So.2d 986 (Ala.1989), and that the father shall pay $45 per month to the mother to reimburse her for medical insurance or shall provide the medical insurance.
On April 23, 1991, the state filed a motion to alter, amend, or vacate, alleging that the trial court's order did not elaborate on the details of the agreement regarding college support, that it was not specific regarding the father's current support obligation, and that the father failed to pay the $12,000 and had breached the terms of the agreement. The father answered, stating that the motion should be denied because it had been filed more than thirty days after the entry of judgment in violation of Rule 59(b), Alabama Rules of Civil Procedure. He further stated that he had filed a bankruptcy proceeding and that all claims against him were stayed and could not be pursued. The motion was denied.
On August 15, 1991, the state filed a motion for relief under Rule 60(b)(3) and (6), A.R.Civ.P., from the March 15, 1991, judgment, alleging that the mother was misled by the father's promise to pay her $12,000 in settlement of her $38,091.74 claim (which included interest), when he had no means or ability to meet such obligation and when he knew that he would file bankruptcy and did not intend to meet the obligation. She asked that the trial court enter a judgment in her favor in the amount of $38,091.74 for child support arrearage and interest and set child support, college tuition, and college expenses to be paid by the father until the child completes college. The mother filed an affidavit in which she stated that the father admitted during questioning at a bankruptcy creditors' meeting that, after the origination of the present proceeding, he mortgaged property for substantial sums and used none of the funds to pay child support. She further stated that, when he promised to pay the $12,000, he knew that he did not have the means to pay it and that he did not intend to keep the promise.
The father filed a motion to dismiss, claiming that the court had previously ruled on the same issue and that based on the principle of res judicata, the trial court could not rule again. Following a hearing, the trial court denied the motion to dismiss and set a hearing on the state's Rule 60 motion. Following that hearing, the trial court set aside the March 15, 1991, order and reset the cause for hearing.
*437 On October 23, 1991, after an ore tenus proceeding, the trial court entered an order granting a judgment against the father for $36,411.15 and setting child support in the per month. The other provisions of the previous judgment remained the same.
The state filed a motion to alter, amend, or vacate the judgment on November 12, 1991, alleging that the order for child support was not in compliance with the child support guidelines, Rule 32, A.R.J.A., and asking that child support be set at $554.70. The trial court denied the motion on December 19, 1991.
The father appeals, contending that the trial court erred in granting the Rule 60(b) motion. The state cross-appeals, contending that the trial court erred in setting the child support at $307.16. We affirm in part, reverse in part, and remand.
The record reveals that the mother and the father were divorced on February 20, 1975, and that the child was just under one year of age at that time. The father testified that about one year later he contacted the mother to request some type of visitation; that he received a letter from an attorney asking if he would be interested in allowing the child to be adopted and stating that he would give up all rights and would not have to pay support; that forms for his signature were included with the letter; that he signed the forms in June 1977 and returned them to the attorney; and that he then believed that he was no longer responsible for child support. He further testified that he had hoped to borrow $12,000 to settle the child support arrearage, but that after the child support was set at $547 per month, plus $45 for medical insurance, he was unable to borrow the money. The father stated that he has two other children and that he earns $51,000 a year.
Letters contained in evidence show that on August 20, 1976, the father's attorney wrote to the mother, stating that the father wished to have prolonged visits with the child to establish a relationship or that he would be willing to "step aside" and allow the child to be adopted. The mother's attorney responded on August 26, 1976, that the mother was interested in giving further consideration to the possibility of adoption. He enclosed a parental consent form, which he asked the father to execute so that the mother would "be in a better position to consider the matter." The father signed the consent form on June 17, 1977, almost one year later.
The mother testified that the father called her and wrote to her, saying that he did not agree to the adoption. She further testified that she did not know how to locate the father during the intervening years and that she decided to try to collect child support when she saw the father on a television show and realized that he was living in the area.
The parties stipulated at the hearing that $547.23 was the proper amount of child support. However, the trial court stated at the hearing that it was not inclined to grant that much child support from someone who made $51,000 a year and had two other children to support. It then awarded $307.16 per month in child support, using a child support guideline form that indicated that the father had a monthly gross income of $3,463 (or a yearly gross income of $41,556) and that he should pay one-third of $921.48 for the child in question (or $307.16). This form was signed by the trial judge.
The father contends that the trial court erred in granting the Rule 60(b) motion when, he claims, it had previously denied a similar Rule 60(b) motion. This is the only issue that he presents for review.
The state responds that the first motion to alter, amend, or vacate was not a Rule 60(b) motion, that the father argued before the trial court that the motion was a Rule 59 motion that was filed too late for consideration by the trial court. It states that the father cannot now claim that the motion was filed pursuant to Rule 60 because an issue may not be reviewed on a different theory from that on which it was tried below. Kent v. Sims, 460 So.2d 144 (Ala. 1984). However, the state argued to the trial court that the motion should be considered as a Rule 60(b) motion; therefore, the theory was presented and tried below.
*438 However, because the first motion filed by the state did not allege any Rule 60(b) grounds and none of the Rule 60(b) grounds justifying relief were established by the state, we hold that the motion was a Rule 59(e) motion in both form and substance, which must be filed within thirty days of the judgment. See Cornelius v. Green, 477 So.2d 1363 (Ala.1985); Harwell v. Merritt Oil Co., 541 So.2d 564 (Ala.Civ. App.1989). The trial court correctly denied the motion which was filed after thirty days.
The father claims that the second motion, which was styled as a Rule 60(b) motion, was merely a motion for the trial court to reconsider its previous order denying the motion to alter, amend, or vacate and that, according to Harwell, such a motion is not allowed.
The state argues that, because it did not become aware of the father's misrepresentation regarding his ability and intent to carry out his part of the agreement until the creditors' meeting, the fraud issues could not have been presented to the court earlier. We hold that, in this particular case, because the grounds contained in the Rule 60(b) motion were unknown and could not have been presented in the previously denied Rule 59 motion to alter, amend, or vacate, the trial court did not err in granting the Rule 60(b) motion. See Ingram v. Pollack, 557 So.2d 1199 (Ala. 1989). In addition, we note that the trial court's decision whether to grant or deny a Rule 60(b) motion is within the discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. State ex rel. Taylor v. Nelson, 535 So.2d 178 (Ala.Civ.App.1988).
Therefore, based on the above, we hold that the trial court did not abuse its discretion in granting the Rule 60 motion, which resulted in a judgment in the amount of $36,411.15 against the father for child support arrearage and set monthly child support at $307.16. We affirm the grant of the Rule 60 motion.
In its cross-appeal the state contends that the trial court erred in ordering that the father pay only $307.16 in child support. It claims that the parties stipulated that the correct amount of child support under the guidelines would be $547.23; that the trial court should not have set the support at anything other than the amount stipulated; and that, even if the trial court had the right to set the support at some other amount, it erred in setting an amount for child support that was not indicated by the evidence. It further claims that the trial court erred by reducing the amount of gross income earned by the father and including the two children presently living with him and supported by him as children due support under the guidelines.
Rule 32(A)(1), A.R.J.A., the Child Support Guidelines, provides as follows:
"Stipulations presented to the court shall be reviewed by the court before approval. No hearing shall be required; however, the court shall use the guidelines in reviewing the adequacy of child support orders negotiated by the parties, and shall review income statements which fully disclose the financial status of the parties; however, the court may accept from the parties and/or their attorneys of record a Child Support Guidelines Notice of Compliance which indicates compliance with this rule or, in the event the child support guidelines have not been met, the reason for the deviation therefrom."
Clearly, the trial court, pursuant to Rule 32(A)(1), has the right to set the amount of child support, after reviewing the stipulations of the parties, using the guidelines and income statements. However, we will consider whether the trial court erred in setting the amount of child support after using a lower amount of income than that testified to by the father and in considering the two additional children of the father, for whom he is not paying support under a court order.
Rule 32(C)(1) provides in pertinent part as follows: "`Adjusted Gross Income' means gross income less preexisting child support obligations.... The category entitled `number of children due support' in the schedule means children for whom the parents *439 share joint legal responsibility and for whom support is being sought." Rule 32(B)(6) provides in pertinent part that "[i]f the proceeding is one to modify an existing award of support, no deduction should be made for other children born or adopted after the initial award of support was entered except for support paid pursuant to another order of support."
The question was considered in Loggins v. Houk, 595 So.2d 488, 489 (Ala.Civ.App. 1991), where this court stated: "Clearly, a deduction may not be made for children born or adopted after the initial award of support unless pursuant to another order of support when determining the amount of child support to be paid pursuant to the guidelines." However, we further stated that the trial court could consider evidence of the increased expenses because of these children in determining whether the application of the child support guidelines would be manifestly unjust or inequitable. See Rule 32(A)(ii).
In the present case the trial court apparently made a deduction from the father's gross monthly income, as well as applying the guidelines using three children. This is not allowed by Rule 32. Although it could have considered evidence of the expenses because of the father's two additional children in determining whether application of the child support guidelines would be manifestly unjust or inequitable, such evidence was not before the court. Therefore, we find that the trial court incorrectly applied the child support guidelines and erred in ordering that the father pay $307.16 in child support. We reverse and remand for the trial court to determine the correct amount of child support, using $4,259.25 ($51,000 divided by twelve months) as the father's gross monthly salary and applying the guidelines for one child.
The judgment is affirmed in part, reversed in part, and the cause remanded, with instructions for the trial court to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
ROBERTSON, P.J., concurs specially.
ROBERTSON, Presiding Judge, concurring specially.
I concur in the reversal; however, I would reverse and remand with directions to the trial court to set an amount of child support in accordance with Rule 32, A.R.J.A., or to make a written finding on the record, under the proper criteria, that the application of the guidelines would be unjust or inequitable.